FILED
2016 Mar-23  AM 10:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| SHANNON JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 6:14-cv-2074-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

## I.    Introduction

The plaintiff, Shannon Jones, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Ms. Jones timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Jones was thirty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education and attended three years of college. (Tr. at 168, 173.) Her past work experiences include employment as a waitress, cashier, general store laborer, caregiver, office clerk, poultry hanger, and packer or hand packager. (Tr. at 75-76, 202-09). Ms. Jones

initially claimed that she became disabled on January 1, 2006, but at her hearing she amended her alleged onset date to September 6, 2011. (Tr. at 35, 56.) She also withdrew her original claim for disability insurance benefits at her hearing because she did not have disability insured status on the date of onset. (Tr. at 35, 56.) Thus, the ALJ addressed only Plaintiff's SSI application. (Tr. at 35-42.) At her hearing, Plaintiff alleged disability due to "long-standing back problems, neck problems, fibromyalgia, migraines, . . . asthma, . . . some depression, anxiety, panic attacks." (Tr. at 56-57, 172). Plaintiff also alleged diabetes and resulting neuropathy. (Tr. at 57.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA").  *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The decision depends on the medical evidence contained in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's

residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Jones met the insured status requirements of the Social Security Act through September 30, 2007. (Tr. at 37). She further determined that Ms. Jones has not engaged in SGA since the alleged onset of her disability, September 6, 2011. (*Id.*) According to the ALJ, Plaintiff's obesity, diabetes mellitus, asthma, hypertension, degenerative disc disease, degenerative joint disease, and major depressive disorder are

considered "severe" based on the requirements set forth in the regulations. (*Id.*)
However, she found that these impairments neither meet nor medically equal any
of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 38.)
The ALJ did not find Ms. Jones's allegations to be totally credible, and she
determined that she has the RFC to perform light work with the following
additional limitations:

> She can occasionally climb ramps and stairs, but never ladders, ropes
> or scaffolds. She can frequently balance, kneel, and crawling [sic], as
> well as occasionally stoop and crouch. She can never reach overhead
> with her upper extremities bilaterally, but can constantly reach in
> other directions. Additionally, she can occasionally handle, finger, and
> feel with her bilateral upper extremities. The claimant can never work
> in environments with concentrated exposure to extreme heat, extreme
> cold, humidity, or wetness. Further, she is unable to work in an
> environment that features any exposure to hazardous conditions, such
> as unprotected heights and moving machinery. Regarding the
> claimant's mental impairments, she is able to understand, remember,
> and carry out simply instructions, but not more detailed or complex
> ones. The claimant can maintain occasional interaction with the
> public, as well as frequent interaction with coworkers and supervisors.
> Lastly, the claimant can sustain concentration and attention for two
> hours at a time, provided normal work breaks are given.

(Tr. at 40-41.)

According to the ALJ, Ms. Jones was unable to perform any of her past
relevant work, she was a "younger individual aged 18 to 49" on the alleged
disability onset date, and she has at least a high school education and is able to
communicate in English, as those terms are defined in the regulations. (Tr. at 45.)

Because Plaintiff could not perform the full range of light work, the ALJ relied on testimony from a vocational expert ("VE") to find that there are still a significant number of jobs in the state and national economies that she is capable of performing, such as bench assembler, general office clerk, and merchandise price marker. (Tr. at 46.) The ALJ also found that there are occupations at the sedentary level as well that Plaintiff could perform, such as telephone order clerk, sorter, and table worker/sorter. (Tr. at 46-47.) The ALJ thus concluded her findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from September 6, 2011, through the date of this decision . . . ." (Tr. at 47.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Ms. Jones alleges that the ALJ's decision should be remanded for one reason: the ALJ and the Appeals Council did not properly evaluate her claim that she suffers from fibromyalgia. This argument implicates contentions that the ALJ failed to evaluate her fibromyalgia at steps two, three, and four of the sequential evaluation process, as well as that the Appeals Council erred in denying review. In Plaintiff's reply brief, however, she appears to limit her argument to the contention that the ALJ erred in failing to find her fibromyalgia severe at step two and in failing to consider whether it equaled a listing at step three. In an abundance of caution, however, this opinion will discuss the ALJ's findings at step four as well, as well as the Appeals Council's findings on review.

Notably, Plaintiff has not alleged that the ALJ or the Appeals Council erred in their consideration of any other impairment. Plaintiff has therefore abandoned any other challenge to the ALJ's decision. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 832 (11th Cir. 2011) (citing *Rowe v. Schreiber*, 139 F.3d 1381, 1382 n. 1 (11th Cir. 1998)).

Social Security Ruling ("SSR") 12-2p, which governs how the Commissioner must consider fibromyalgia in the sequential evaluation process, applies to the analysis here. *See* SSR 12-2p, 2013 WL 3104869 at *1, n.1 ("The policy interpretations in this SSR also apply . . . to claims above the initial level.").

The Ruling essentially explains that fibromyalgia is a syndrome in which a person has long-term, body wide pain and tenderness in the joints, muscles, tendons, and other soft tissues. *See id.* It also acknowledges that this condition has also been linked to fatigue, sleep problems, headaches, depression, and anxiety. The ruling "provides guidance on how we develop evidence to establish that a person has a medically determinable impairment . . . and how we evaluate fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act." *See id.* SSR 12-2p provides that a person can establish that he or she has a medically determinable impairment of fibromyalgia by providing evidence from an acceptable medical source. *Id.* at *2. Moreover, the Ruling provides:

> [W]e cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of FM, determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities.

*Id.*

A.    **Step Two**

Plaintiff argues that the ALJ failed to determine whether her fibromyalgia was a "severe" impairment at step two. SSR 12-2p discusses what a claimant must

show to establish her fibromyalgia constitutes a severe impairment at step two. 2012 WL 3104869, at *2-3. SSR 12-2p requires evidence of all of the following: (1) a history of widespread pain; (2) at least 11 positive tender points, bilaterally and both above and below the waist, or the repeated manifestation at least 6 fibromyalgia symptoms; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. *Id.*

The ALJ discussed fibromyalgia at Plaintiff's hearing. (Tr. at 45-46, 54-82). In her decision, the ALJ also mentioned that Plaintiff alleged fibromyalgia as part of her disability claim. (Tr. at 41). The ALJ then found at step two that Plaintiff had severe impairments of obesity, diabetes mellitus, asthma, hypertension, degenerative disc disease, degenerative joint disease, and major depressive disorder. By naming those limitations and only those limitations, and failing to list fibromyalgia, it is clear then that the ALJ did not find that Plaintiff had a diagnosis of fibromyalgia and that it was a severe impairment. (Tr. at 38). Plaintiff has not cited in her brief any actual diagnosis of fibromyalgia from an acceptable medical source; instead, she relies on her attorney's contentions at the hearing, her disability report to the agency, and her testimony at the hearing as support. (Doc. 11 at 2, 12)(citing Tr. at 42, 56-57, 64-65)). More importantly, contrary to Plaintiff's allegation in her brief that Dr. Lorn Miller, her treating physician of five

years, diagnosed her with and treated for fibromyalgia, the record does not contain any indication that he ever diagnosed her with fibromyalgia. (*See e.g.*, tr. at 264, 268, 271, 279, 286, 294, 300, 310, 313, 320, 323, 326, 334, 341, 348, 362, 365, 368, 374, 381, 393, 412, 418, 808)(wherein Dr. Miller diagnosed Plaintiff with low back pain and neck pain but not fibromyalgia)). No other doctor diagnosed fibromyalgia. (Tr. at 258-59, 555,654, 659, 666, 670, 672). As noted, SSR 12-2p provides that a person can establish that he or she has a medically determinable impairment of fibromyalgia by providing evidence from an acceptable medical source. 2012 WL 3104869, at *2; *see also* 20 C.F.R. §§ 404.1513(a), 416.913(a) (requiring evidence from an acceptable medical source to establish whether a claimant has a medically determinable impairment). Here, there is none.

For the first time in her reply brief, Plaintiff points the Court to medical records she claims support her claim of fibromyalgia, but these progress notes assess chronic pain syndrome, chronic low back pain, arthritis, and fatigue, not fibromyalgia. For example, progress notes dated March 13, 2012, and May 10, 2012, from Smith Lake Family Medicine, assess chronic pain syndrome, not fibromyalgia. (Tr. at 643, 655.) Those notes state that Plaintiff's chronic lower back pain is being managed with methadone and Percocet for breakthrough pain, and that she is "responding well to (methadone) without any adverse side effects. The

medication allows her to care for herself and her family. In addition the medication makes her pain tolerable to a substantial degree." (*Id.*) Additionally, progress notes of treating physician Dr. Miller on March 13, 2012, assess low back pain, arthritis, other malaise, and fatigue, not fibromyalgia. (Tr. at 672.) Plaintiff appears to equate fibromyalgia with "its related symptoms of chronic pain and fatigue." (Doc. 15 at 2.) This argument is unavailing. The ALJ's analysis at step two is sufficient and supported by substantial evidence, because there was no "objective medical evidence" in the record to establish the presence of fibromyalgia. *See* SSR 12-2p, 2012 WL 3104869, at *3.

## B.    Step Three

Plaintiff also argues that the ALJ failed to determine whether her fibromyalgia alone or in combination with other impairments equaled a listing at step three. SSR 12-2p requires that at step three of the sequential evaluation process, the Commissioner consider

> whether a person's impairment(s) meets or equals the criteria of any of the listings of the Listing of Impairments in appendix 1, subpart P, of 20 CFR Part 404 (appendix 1). Fibromyalgia ("FM") cannot meet a listing in appendix 1 because FM is not a listed impairment. At step 3, therefore, we determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

2012 WL 3104869 at *6. Plaintiff apparently argues that because SSR 12-2p mentions Listing 14.09D for inflammatory arthritis as an example of one of the listings under which an ALJ can consider a claimant's diagnosis of fibromyalgia, that she meets that listing. However, when read in context, as seen above, SSR 12-2p allows the ALJ to consider whether fibromyalgia either 1) medically equals a listing on its own or 2) medically equals a listing in combination with other medically determinable impairments.

Here, the ALJ did not consider Listing 14.09D for inflammatory arthritis but instead considered Plaintiff's combined "musculoskeletal conditions" and mental impairments under Listings 1.02 (major dysfunction of a joint(s) due to any cause), 1.04 (disorders of the spine), and 12.04 (affective mental disorder). (Tr. at 38, 39). The ALJ apparently did so because at the hearing, Plaintiff argued she met Listings 1.04 and 12.04. (Tr. at 57). Even though Plaintiff alleged that she has fibromyalgia, because she and her attorney failed to bring to the ALJ's attention any contention that Listing 14.09D was at issue, the ALJ was under no obligation to specifically discuss whether Plaintiff's impairments met or equaled Listing 14.09D. *See, e.g., Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (holding ALJ had no duty to consider claimant's chronic fatigue syndrome ("CFS") diagnosis where claimant was represented and did not allege she was disabled due to CFS either

when she filed her claim or at her hearing) (citing *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)); *East v. Barnhart,* 197 F. App'x 899, 902 (11th Cir. 2006) ("the ALJ need not scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant"); *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (noting claimant did not raise mental health issues as a basis for disability, and "this failure alone could dispose of his claim, as it has been persuasively held that an 'administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability'") (quoting *Pena*, 76 F.3d at 909).

The ALJ also specifically found Plaintiff did not equal "any" listings because no treating, examining, or reviewing physicians had suggested the existence of impairments of any impairment or combination of impairments that would medically equal the criteria of any listed impairment. (Tr. at 38). The ALJ also explained that Plaintiff's musculoskeletal conditions did not equal Listing 1.02 or 1.04 because her pain did not prevent her from performing any fine or gross motor functions nor did the record indicate she could not ambulate effectively. (Tr. at 38). Reviewing Plaintiff's obesity along with her low back pain, hypertension, asthma, and mental impairments, the ALJ further considered whether Plaintiff's mental

impairment would meet or equal Listing 12.04 (affective mental disorders). (Tr. at 38-40). The ALJ concluded that there was no evidence that even with Plaintiff's obesity, she had a condition that equaled a listing. (Tr. at 28-39). In light of the facts of this case and the ALJ's analysis, the ALJ properly evaluated whether Plaintiff's medical condition equaled a listed impairment. *See Prince v. Comm'r, Soc. Sec. Admin.*, 554 F. App'x 967, 969 (11th Cir. 2014) (holding that an ALJ's finding as to whether a claimant does or does not meet a listing may be implied from the record and that an ALJ does not have to "mechanically recite" the evidence leading to her listing determination)(citing *Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)).

## C.    Step Four and the ALJ's Credibility Determination

The Court will also address how the ALJ treated Plaintiff's subjective complaints of fibromyalgia in her step four analysis of Plaintiff's RFC. A claimant's RFC is the most he or she can still do despite his or her limitations. *See* 20 C.F.R. §§ 416.920(e), 416.945(a)(1), (a)(3). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 416.946(c); 20 C.F.R. § 416.927(d)(2) (stating assessment of claimant's RFC is issue reserved for the Commissioner); *Robinson*, 365 F. App'x at 999 ("the task of determining a

claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors").

The ALJ specifically noted that fibromyalgia was one of the conditions Plaintiff claimed as disabling. (Tr. at 41.) As she noted, Plaintiff claimed that all of her impairments restricted her ability to lift, stand, walk, sit, reach, use her hands, climb stairs, squat, bend, kneel, talk, remember and understand information, complete tasks, concentrate, follow instructions, and get along with others. (Tr. at 41, 186-93).

Subjective complaints of pain and other symptoms may establish the presence of a disabling impairment if they are supported by medical evidence. *See Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 1991) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). Nonetheless, the ALJ is permitted to discredit the claimant's subjective testimony

of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). In making a credibility determination, an ALJ may consider the opinions of treating physicians and consultative examiners, as well as those of other medical doctors. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The credibility determination does not need to refer to "every piece of evidence in his decision [regarding credibility], so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer*, 395 F.3d at 1210-1211.

In this case, although the ALJ found that Ms. Jones's impairments could be expected to cause the alleged symptoms, she did not believe that her statements regarding the limiting effects of her pain were entirely credible. (Tr. at 41). Substantial evidence supports the ALJ's credibility determination here.

Specifically, the ALJ first acknowledged that Plaintiff had an "extensive" history of low back and neck pain after she was involved in car accident in 1998. (Tr. at 41). The ALJ further acknowledged two medical opinions confirming

Plaintiff's neck and low back pain: specifically, Plaintiff's former-treating physician, Dr. Scott Boswell, opined in 2004 that Plaintiff should treat her symptoms through a pain management program. (Tr. at 41, 255). Additionally, the ALJ noted that Dr. Miller, Plaintiff's treating physician, noted that Plaintiff had reported to him that her neck and back pain was sharp, aching, and constant. (Tr. at 41, 261). Plaintiff rated her pain as a level of 10 on a scale of 0 to 10 without medication. (Tr. at 41, 255, 261). Based on this evidence, the ALJ concluded that Plaintiff experienced some degree of symptoms. (Tr. at 42).

However, as noted by the ALJ, the objective medical evidence of record did not support Plaintiff's claim that she was as severely limited as she claimed. X-rays showed Plaintiff had other musculoskeletal impairments, namely, degenerative disc disease and degenerative joint disease. (Tr. at 37, 262, 637, 808). SSR 12-2p provides that other impairments that can cause the same or similar symptoms as fibromyalgia must be excluded in determining whether fibromyalgia is a medically determinable impairment for a claimant. 2012 WL 3104869, at * 3. There was also little diagnostic evidence from cervical and lumbar x-rays. (Tr. at 42). That evidence essentially showed Plaintiff had mild or minimal changes while a bone density scan was normal. (Tr. at 42, 269). Consistent with SSR 12-2p, the ALJ properly considered this diagnostic testing. (Tr. at 42-45). *See* SSR 12-2p

(indicating that other disorders causing the symptoms or signs must have been excluded and that imaging and other laboratory tests are used to do so); *see also De Olazabal v. Soc. Sec. Admin., Comm'r*, 579 F. App'x 827, 830-31 (11th Cir. 2014), stating in part:

> Moreover, the ALJ did not rely on the absence of objective evidence of fibromyalgia in discounting Dr. Greer's opinion, as the ALJ explicitly accepted Dr. Greer's diagnosis of fibromyalgia. Rather, the ALJ relied on the fact that Dr. Greer admitted that her opinion was based on Claimant's subjective reports of her symptoms, which, as discussed below, were not entirely credible in light of the inconsistencies in her testimony and between her testimony and the record evidence.

Moreover, the treatment Plaintiff received for her musculoskeletal conditions did not substantiate her claim of severe limitations. Plaintiff visited the office of Dr. Jan Westerman, complaining of only back, neck, and shoulder pain. (Tr. at 42, 664). At that time, Plaintiff no longer rated her level of pain as ten but reported that it was only a two on the pain scale. (*Id.*) Moreover, Plaintiff visited Dr. Westerman's office from January 2012 to May 2012 and each time, she demonstrated full muscle strength throughout her body and reported no upper or lower tenderness to palpation. (Tr. at 42, 641-667). Pursuant to SSR 12-2p, the ALJ properly considered these clinical findings, especially evidence concerning Plaintiff's pain locations, whether the pain was bilateral, and whether the pain

involved both the upper and lower extremities, and any tenderness. *See e.g.*, SSR 12-2p (noting that under the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia, there must be a history of widespread pain in all quadrants of the body and axial skeletal pain that has persisted for at least three months, with at least 11 positive tender points on physical examination and those tender points must be found bilaterally and both above and below the waist). Other cases in which an ALJ's decision on a claimant's fibromyalgia has been affirmed are in accord with the ALJ's determination here. *See Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877 (11th Cir. 2014) ("Dr. Davina-Brown's physical examinations of Harrison were consistently unremarkable, and she never found that Harrison suffered from any of the paradigmatic symptoms frequently associated with the most severe cases of fibromyalgia, such as joint swelling, synovitis, or tender trigger points.").

The record also demonstrated that Plaintiff's pain was controlled with medication and she often was not in compliance with her medication regimen. As the ALJ explained, Plaintiff herself attributed the decrease in pain level to her successful pain management medication regimen. (Tr. at 42, 664). Plaintiff also reported as late as May 10, 2012, that her pain had become "more tolerable allowing her to perform household chores." (Tr. at 42, 641). By contrast, failing to

take her prescribed Methadone or Percocet for two weeks resulted in an increase in Plaintiff's pain level. (Tr. at 42, 683). As for Plaintiff's psychiatric symptoms, the ALJ noted that these symptoms never resulted in any form of hospitalization. (Tr. at 43, 593). Indeed, Plaintiff took only one medication, Paxil, as the sole treatment for her psychiatric complaints. (Tr. at 43, 593). Lastly, the ALJ observed that the record showed Plaintiff repeatedly failed to comply with pain management requirements and treatment, which made the ALJ question the credibility of her allegations of pain. (Tr. at 44, 255, 239, 240, 241, 242, 640).

The medical opinions in the record also supported the ALJ's determination that Plaintiff's claim of disabling pain was not entirely credible. Dr. Chastain, the non-examining reviewing state agency consultant, reviewed Plaintiff's allegations of diabetes, high blood pressure, gallstones, back and neck pain, fibromyalgia, migraines, and asthma. (Tr. at 637). He opined that Plaintiff could still perform light work; she had occasional postural limitations on climbing, stooping and crouching; she could never climb ladders, ropes, or scaffolds; and she could frequently engage in all other postural activities. (Tr. at 632). According to Dr. Chastain, Plaintiff could not reach overhead but could reach in all other directions. (Tr. at 633). Dr. Chastain further opined that Plaintiff should avoid concentrated exposure to temperature extremes, humidity, fumes, odors, dusts, gases, and poor

ventilation. (Tr. at 634). He felt she should avoid all exposure to hazards and unprotected heights. (Tr. at 634). Dr. Chastain explained that he based his opinion on Plaintiff's reported daily activities, range of motion findings, cervical x-ray, body mass index, and medical records from Walker Baptist Medical Center, Center for Neurological Care, Manasco Chiropractic, and Northwest Medical Center. (Tr. at 637). State agency consultants are highly qualified specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 416.927(e)(2)(i); SSR 96-6p, 1996 WL 374180. The ALJ concluded that Dr. Chastain's opinion was due great weight because it was "consistent with the record when considered as a whole." (Tr. at 44).

The ALJ gave little weight to treating physician Dr. Miller's statement dated January 8, 2013, that, based on his observations, and Plaintiff's diagnoses, that she was permanently disabled. (Tr. at 45, 808). Citing SSR 96-5p, 1996 WL 374183, the ALJ reasoned that this opinion is one that is reserved to the Commissioner. (Tr. at 45). The ALJ's analysis is proper. Opinions on some issues, such as whether the claimant is disabled or unable to work and the claimant's RFC, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner

because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 416.927(d).

Finally, Plaintiff's activities of daily living are not indicative of the disabling limitations she alleged. Plaintiff took care of her two children independently, shopped in stores for food, drove, and infrequently attended church. (Tr. at 42, 594). An ALJ is entitled to consider a plaintiff's daily activities as one factor in making credibility determinations. *See* 20 C.F.R. § 416.929(c)(3)(i); SSR 96-7p. SSR 12-2p specifically entitles the ALJ to consider one's daily activities when determining whether fibromyalgia is a medically determinable impairment: "If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities."

In sum, the ALJ specifically addressed Plaintiff's allegations of pain in her opinion, and she provided explicit and reasonable reasons for rejecting her testimony. As the foregoing demonstrates, substantial evidence supports the ALJ's decision to discredit Plaintiff's complaints of pain associated with fibromyalgia.

### D.    Appeals Council's Denial of Review

Plaintiff also implies that the Court should reverse and remand the ALJ's decision because the Appeals Council failed to consider SSR 12-2p. To the

contrary, specifically, in its denial of Plaintiff's request for review, the Appeals Council stated that it applied "the laws, regulations and rulings in effect as of the date we took this action," which would cover SSR 12-2p. (Tr. at 1). The Appeals Council found no reason under the rules in effect to review the ALJ's decision. (*Id.*) *See* 20 C.F.R. § 416.1470(a)(2) (explaining that the Appeals Council reviews an ALJ's decision when it finds an error of law). Though the Appeals Council did not specifically cite SSR 12-2p as a rule it considered, there is no requirement for articulation when the Appeals Council denies review. *See Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 784 (11th Cir. 2014) (". . . the Appeals Council is not required to explain its rationale for denying a request for review . . ."). Thus, the Appeals Council properly denied Plaintiff's request for review.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Jones's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 23, 2016.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704